IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

| | | |
|---|---|---|
| ALICE SMITH | § | PLAINTIFF |
| | § | |
| v. | § | CAUSE NO. 2:05CV2188 LG-JMR |
| | § | |
| HOME DEPOT U.S.A., INC. | § | DEFENDANT |

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

THE MATTER BEFORE THE COURT is the Motion for Summary Judgment [74] filed by Defendant Home Depot U.S.A., Inc. Plaintiff Smith has filed her response and Home Depot has replied. After due consideration of the submissions and the relevant law, it is the Court's opinion that Smith has shown a question of material fact exists as to her racial discrimination claims based on disparate pay and failure to promote. However, Smith has failed to show a question of material fact for the jury in regard to any of the remaining claims. The Motion is therefore granted in part and denied in part.

DISCUSSION

Smith, an African-American woman, has been employed as a Home Depot associate since June 2002. She complains that she has applied for other associate positions paying more, but Caucasian people with less experience have received the positions. She further alleges that Caucasian people hired into her current department, inventory management, receive higher pay than she does. She complains that she was treated differently than Caucasian associates during the two weeks the store was preparing to open by being assigned to clean restrooms. Further, she alleges she receives less consideration than Caucasian associates in scheduling.

Smith filed a charge of race discrimination with the EEOC. Compl. Ex. "A" 3-4. After

determining that it would be unable to complete a timely review of Smith's charge, the EEOC issued a right to sue letter on September 22, 2005.  Smith then filed this lawsuit, bringing claims under Title VII of hostile work environment and disparate treatment based on race discrimination, as well as a claim of retaliation for "participating in the investigation of the hostile work environment, disparate treatment and unlawful work practices of her employer." Compl. 13.  Smith brings identical racial discrimination claims pursuant to 42 U.S.C. § 1981.  Finally, Smith makes a state-law claim of intentional infliction of emotional distress.

      RACIAL DISCRIMINATION:

Title VII provides that it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race. . . ."  42 U.S.C. § 2000e-2(a)(1).  "In the context of Title VII litigation, we recognize two types of discrimination claims: disparate treatment and disparate impact."  *Munoz v. Orr*, 200 F.3d 291, 299 (5th Cir. 2000).  "Disparate treatment refers to deliberate discrimination in the terms or conditions of employment, . . . on account of race, national origin, or gender."  *Munoz*, 200 F.3d at 299.  Plaintiff's claim here is one of disparate treatment.

The allocation of the burden of proof in Title VII cases depends on the nature of the plaintiff's evidence supporting the causation element.  If the plaintiff seeks to establish causation by circumstantial evidence, the tripartite burden-shifting framework of *McDonnell Douglas* applies.  *See Portis v. First Nat'l Bank,* 34 F.3d 325, 328 (5th Cir.1994) ( "Because direct evidence is rare, a plaintiff ordinarily uses circumstantial evidence to meet the test set out in *McDonnell Douglas* [, which] establishes a prima facie case by inference.").  The analysis of

claims asserted under 42 U.S.C. § 1981 is identical to that under Title VII, and cases of discrimination based on circumstantial evidence are also subject to the *McDonnell Douglas* burden-shifting analysis. *See Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 316 (5th Cir. 2004). Under the *McDonnell Douglas* framework, the plaintiff carries the initial burden of establishing a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

In order to establish a prima facie case of discrimination based on race a plaintiff must usually show that (1) she suffered an adverse employment action; (2) she was qualified for the position; (3) she was within the protected class at the time of the decision; and (4) the person selected was not within the protected class. *Rios v. Rossotti,* 252 F.3d 375, 378 (5th Cir. 2001). As to the fourth element, a plaintiff may alternatively show that others similarly situated but not in her protected class were more favorably treated. *Bryan v. McKinsey & Co., Inc.*, 375 F.3d 358, 360 (5th Cir. 2004). If the plaintiff establishes a prima facie case of discrimination, the burden of production shifts to the defendant to rebut the presumption of discrimination by articulating a legitimate, nondiscriminatory reason for its disparate treatment of the plaintiff. An employer meets its burden of production by proffering admissible evidence of an explanation that would be legally sufficient to justify a judgment for the employer. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993); *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955 (5th Cir. 1993); *Guthrie v. Tifco Indus.*, 941 F.2d 374 (5th Cir. 1991). Once an employer articulates a legitimate, nondiscriminatory reason for its action, the burden shifts to the plaintiff to produce admissible evidence which demonstrates that the employer's reason is a pretext for prohibited discrimination. *Barrow v. New Orleans S.S. Ass'n*, 10 F.3d 292 (5th Cir. 1994); *Purcell v.*

*Sequin State Bank & Trust Co.*, 999 F.2d 950, 957 (5th Cir. 1993). In situations where an employer's reasons are "unpersuasive, or even obviously contrived," plaintiff must nevertheless prove that the proffered reasons were but a pretext for discrimination. *St. Mary's Honor Ctr.*, 509 U.S. at 523.

Because employment discrimination claims "involve nebulous questions of motivation and intent," summary judgment is generally an inappropriate tool for resolving these cases. *Thornbrough v. Columbus & Greenville R.R.Co.*, 760 F.2d 633, 640-41 (5th Cir. 1985) (citations omitted). However, if Plaintiff fails to establish a prima facie case, *Bauer v. Albermarle Corp.*, 169 F.3d 962, 966 (5th Cir. 1999), or if defendant presents strong evidence of a legitimate, nondiscriminatory reason for its actions and the plaintiff is unable to counter with additional evidence of pretext, summary judgment may be properly granted. *Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1295 (5th Cir. 1994).

Plaintiff's racial discrimination claims fall into three categories: denial of promotions, disparate pay and hostile work environment.

A.  Denial of Promotions

Smith complains about three positions she applied for but did not receive: cross-merchandiser, scheduler, and inventory management associate ("IMA"). Although the parties dispute whether the positions Smith desired and applied for were promotions, the Court will assume along with Smith for purposes of this Motion that they were promotions rather than lateral moves. None are supervisory positions, but Plaintiff asserts that all paid more per hour than her position in the Phone Center. In order to establish a *prima facie* case of a discriminatory failure to promote, the plaintiff must show that: (1) she was within a protected class; (2) she was

qualified for the position sought; (3) she was not promoted; and (4) the position was filled by someone outside the protected class. *Oden v. Oktibbeha County, Miss.*, 246 F.3d 458, 468 (5th Cir. 2001). Smith has made a satisfactory showing of each of these elements as to the 2004 cross-merchandiser position and the scheduler position. Thus, the Court moves on to examine Home Depot's evidence of legitimate, non-discriminatory reasons for not promoting Smith to those positions.

### i. 2004 Cross-Merchandiser Position

The first promotion Smith complains of was from her initial position in the Phone Center. She alleges that former Operations Manager Joyce Garrison offered her a cross-merchandiser position in July 2004, but on the day she was to begin, she learned that the new Store Manager, George Garza, had given the position to a Caucasian man, John Dolese, instead.[1] Garza testified:

> She brought that to my attention after I was at the store. She said something about, you know, she was up for a promotion. And, again, I couldn't tell you what promotion it was. It was evidently something that was promised to her before I got there. And I don't know if someone had already been hired into that position or promoted within the store in that position prior to me getting there. And she let me know that, you know, she felt it was done unfairly. That she wasn't even interviewed for it. Gredwood informed me that indeed she was interviewed and indeed that she did not possess the qualifications for the job.

Ct. R. 100-2, p. 140.

According to Human Resources Manager Gredwood Poole:

> Alice was basically an associate in the phone center who could do that job in the phone center. She, I gather, had opportunities to do more, but she was the type person that, I mean, she always wanted to do more in the store but she wouldn't step up in the current position she was in. . . . They wanted to train her to be able to run a register to help take care of customers, and basically she didn't want to learn the register. . . . [S]he didn't want to do the little jobs but . . . wanted to do

---

[1] Joyce Garrison is deceased.

>the big job, but she had to prove herself to basically take on additional responsibilities in the store.

Ct. R. 101-3, p. 240-41.

According to Dolese's deposition testimony, he began working at Home Depot, on the nighttime freight team, in either August or June 2004. Ct. R. 77, p. 6-8. He moved to Home Depot from his job as a department manager at Wal-Mart. *Id.* at 22. Two to three months after beginning work at Home Depot, he received the cross-merchandiser position. *Id*. at 8. Four to five months after that, he was promoted to a millworks supervisor position. *Id*. at 10. In late May or early June of 2005, he transferred to another Home Depot store. *Id.*

Home Depot argues that its legitimate, non-discriminatory reason for giving the cross-merchandiser position to Dolese was his superior qualifications. Dolese had been employed as a department manager while Smith was perceived by Home Depot management as unwilling to expand her skills. At this stage of the proceedings, Smith's burden is to show that a genuine issue of material fact exists that Home Depot's stated reason is pretextual.

A plaintiff may demonstrate pretext by showing that the employer's proffered explanation is unworthy of belief. *Maurer v. Am. Airlines*, 2007 WL 2876009, *1 (5th Cir. Oct. 2, 2007) (quoting *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 143 (2000)). Further, in a failure to promote case, a showing that the unsuccessful employee was clearly better qualified is enough to prove that the employer's proffered reasons are pretextual. *Maurer*, at *1 (quoting *Price v. Fed. Express Corp*., 283 F.3d 715, 723 (5th Cir. 2002)). "In such a case, the losing candidate's qualifications must leap from the record and cry out to all who would listen that he was vastly--or even clearly--more qualified for the subject job." *Id*.

There is very little evidence produced by the parties regarding the relative qualifications of Smith and Dolese, but "[i]t is the plaintiff's task to demonstrate that similarly situated employees were not treated equally." *Tex Dep't. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 258 (1981). What evidence there is indicates that Smith will not be able to show that she was clearly better qualified than Dolese for the cross-merchandiser position. The Court therefore concludes that Smith has not shown that Home Depot's proffered reason for choosing Dolese is pretext for a true, discriminatory reason.[2]

> *ii. Scheduler*

Smith next complains that she did not receive a job as a scheduler when she applied and interviewed for it sometime before she was placed in her current IMA position. Ct. R. 76, p. 38-9. Wendy McCarthy, who held the lead generator position in the store, was hired instead. *Id*. at 39-40. Smith testified that she, Wendy McCarthy, and perhaps others interviewed with Greg Luckett for the position. Ct. R. 76, p. 39, 41. Home Depot argues again that Smith cannot show that she was clearly better qualified for the scheduler position, but it has presented no evidence at all of its reasons for placing McCarthy in the scheduler position rather than Smith. Ms. McCarthy is barely mentioned in the depositions of Store Manager Garza, and Human Resources Manager Poole. Luckett, the manager who Smith alleges conducted the interviews, does not speak of her in his deposition. Ct. R. 83-39. In his affidavit, Luckett claims he recommended to Garza that Smith be promoted to scheduler, but Garza refused. Ct. R. 83-19 ¶ 10. No reason is given. *Id.*

---

[2] Smith testified that on August 1, 2005, she was offered the cross-merchandiser position, but turned it down. Ct. R. 76, p. 32, 35. By that time, she had applied for and was more interested in the IMA position. *Id.* at 35.

This claim is completely undeveloped in Plaintiff's briefing. However, because Home Depot has failed to proffer evidence of its legitimate, non-discriminatory reason for not promoting Smith to the scheduler position, Smith has no burden to show that the reason is pretext for discrimination. *See St. Mary's Honor Ctr.*, 509 U.S. 502. The Court therefore concludes that Home Depot has failed to show the absence of a question of material fact as to Smith's claim of racial discrimination in the selection of scheduler. The Motion will be denied as to this claim.

### iii. 2005 IMA Position

Plaintiff cannot show the *prima facie* elements of discrimination in regard to her IMA position. She asserts that Home Depot interviewed her for the position but did not hire her for it until a year later, in October 2005. Ct. R. 76, p. 37. The position remained open until it was filled by Smith. *Id.* Thus, Plaintiff cannot show that the position was filled by someone outside her protected class. Furthermore, she ultimately was "promoted" to IMA. Therefore, Smith's *prima facie* case fails on the first two elements of her claim regarding the IMA position.

### B.    Disparate Pay

Plaintiff complains that a number of Caucasian people make more than she does as an IMA. According to Smith's affidavit, while she began at $10.00 per hour and is now paid $10.61 per hour, Suzette Carpenter is paid over $18.25 per hour. Matthew Pierce is making $14.00 per hour. A recent hire, Phoenix Bray, started out at $10.50 per hour, and a recent transfer, James "Dale" Dean, came into the position making more than Smith. Leaving aside the issue of whether Plaintiff has presented this "evidence" in an admissible form, the Court notes that Plaintiff does not provide evidence of the responsibilities, capabilities, experience and training of

these alleged comparators.

Home Depot alleges that the persons paid more than Smith have superior work experience and longer tenure. Differing levels of experience is a non-discriminatory rationale for unequal salaries for employees performing the same job. *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1048-49 (5th Cir. 1996). Despite its allegations that all of these persons are not similarly situated to Smith, Home Depot provides competent summary judgment evidence only as to Suzette Carpenter. Ms. Carpenter began working for Home Depot in 1984 and was earning $18.25 as a garden department supervisor in 2004. Ct. R. 78, p.2. She remained at that wage level when she began working as an IMA in 2005. *Id.* However, Home Depot provides no explanation for the higher wages of Matthew Pierce, who was hired approximately two and a half years after Smith. *Id.* at 1. Thus, from the evidence submitted, it appears to the Court that a question of material fact remains as to Plaintiff's claim of disparate pay. Home Depot's Motion will be denied as to that claim.

    C.    <u>Hostile Work Environment</u>

Smith claims that she was "subjected to a persistent pattern of severe and pervasive harassment on the basis of her race" which has "combined to create a hostile and abusive work environment for Plaintiff." Compl. 5. To establish a *prima facie* case of hostile work environment, Smith must show: (1) she belonged to a protected group; (2) she was subject to unwelcome harassment; (3) the harassment was based on race; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. *Frank v. Xerox Corp.,* 347 F.3d 130, 137 (5th Cir.2003). Smith must subjectively perceive the harassment to be severe and pervasive,

and Smith's perception must also be objectively reasonable.  *Id.*  "For harassment on the basis of race to affect a term, condition, or privilege of employment . . . it must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir.2002) (citations and internal quotation marks omitted).  To determine whether a hostile work environment existed, a court must consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Id.* (citations omitted).  Title VII's overall goal of equality is not served if a claim can be maintained solely based on conduct that wounds or offends, but does not hinder an employee's performance.  *Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 194 (5th Cir.1996).

  Smith alleges that Store Manager Garza made several racist comments that created a hostile environment.  However, none of the comments were directed at Smith.  She only overheard Garza when he saw a black employee sitting near the front of the store and told another manager to tell "that nigger to get off his ass."  Ct. R. 83-2 ¶ 7.  Such "second-hand" harassment carries less evidentiary weight.  *See, e.g., Moser v. Ind. Dep't of Corr.*, 406 F.3d 895, 903 (7th Cir. 2005) (stating that "second-hand harassment," although relevant, carries less weight than remarks or actions directed at the plaintiff); *Jennings v. Univ. of N.C.*, 444 F.3d 255, 272 (4th Cir. 2006) (same); *McKenzie v. Milwaukee County*, 381 F.3d 619, 624-25 (7th Cir. 2004) (holding that the plaintiff's hostile work environment claim failed because many of the incidents complained of were not directed toward the plaintiff); *Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 759-60 (8th Cir. 2004) (holding that the plaintiff had failed to present sufficient

evidence that harassment was severe where comments were not directed toward him, did not refer to him, and in some instances were merely overheard by him); *Black v. Zaring Homes, Inc.*, 104 F.3d 822, 826 (6th Cir. 1997) (the fact that most of the comments were not directed at the plaintiff contributes to the conclusion that the evidence was insufficient to show a hostile work environment).

As a general matter, "[a]lthough discriminatory verbal intimidation, ridicule, and insults may be sufficiently severe or pervasive to support evidence of a Title VII violation, simple teasing, offhand comments, and isolated incidents, (unless extremely serious) will not amount to discriminatory charges that can survive summary judgment." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 347- 48 (5th Cir. 2007) (citations and quotation marks omitted); *See also Hockman v. Westward Comm. LLC*, 407 F.3d 317, 326-27 (5th Cir. 2004) (discussion of frequency of harassment required to sustain hostile work environment claim). In the Court's opinion, the comment overheard by Smith is an isolated incident not sufficiently serious to have interfered with Smith's work performance. Furthermore, Smith's evidence is insufficient to establish that she subjectively perceived the harassment to be severe and pervasive, or that such a perception could be objectively reasonable. The Court therefore finds that Smith has failed to provide evidence sufficient to create a question of material fact regarding her hostile working environment claim.

RETALIATION:

Smith alleges that Home Depot retaliated against her by denying her promotions and wage increases, denying vacation, shift and schedule preferences, and by subjecting her to discipline and harassment. Compl. 13. She alleges that Home Depot took these actions because

she participated "in the investigation of the hostile work environment, disparate treatment and unlawful work practices of her employer." *Id.*

In order to bring a claim of retaliation, Smith must make a *prima facie* showing that she 1) engaged in an activity protected by Title VII or § 1981; 2) suffered a materially adverse employment action; and 3) a causal link exists between the protected activity and the materially adverse employment action. *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471 (5th Cir. 2002); *Burlington N. & Santa Fe Ry. Co. v. White*, 126 S.Ct. 2405, 2415 (2006). "The anti-retaliation provision seeks to prevent employer interference with 'unfettered access' to Title VII's remedial mechanisms." *Burlington*, 126 S.Ct. at 2415, citing *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997). "It does so by prohibiting employer actions that are likely 'to deter victims of discrimination from complaining to the EEOC,' the courts, and their employers." *Id.* There is also a concurrent requirement that the employee's perception or reaction to the action of the employer be objectively reasonable within the context provided by the facts. *Id.*

As to Smith's most serious allegations, that she was disciplined and denied promotions and wage increases in retaliation for protected activity, Smith has provided no argument or evidence establishing a causal connection. The essence of Smith's complaint is that she did not receive positions and wages she desired, but she has not attempted to show that the cause was some protected activity on her part. Further, Smith does not support the allegation that she was disciplined for a retaliatory reason. She asserts in her affidavit that she received an attendance reprimand point "for being nine minutes late to work one day" when company policy would not have required that she be counseled. She "feel[s]" that Home Depot counseled her because she is black and in retaliation for her lawsuit. Ct. R. 83-2 ¶ 23. Smith's speculation that Home Depot

deviated from its policy in retaliation for her lawsuit is inadequate to establish a claim of retaliation under Title VII. *Septimus v. Univ. of Houston*, 399 F.3d 601 (5th Cir. 2005); *Upshaw v. Dallas Heart Group,* 961 F.Supp. 997, 1002 (N.D.Tex. 1997) (A violation of policy, standing alone, does not establish discrimination or retaliation under Title VII.) Furthermore, "Title VII's protection against discrimination does not permit EEOC complainants to disregard work rules or job requirements." *Raggs*, 278 F.3d at 471-72 (5th Cir. 2002).

As to the remaining allegations of being denied vacation, shift and schedule preferences, and being subjected to harassment, even if Smith had established a causal connection between these employer actions and some protected activity, these employer actions are the type of slights and minor annoyances that are not actionable under Title VII. *See Pittman v. Gen. Nutrition Corp.*, 2007 WL 955928, *20 (S.D.Tex. 2007) (citing *Burlington Northern*, 126 S.Ct. at 2415) (allegations of retaliatory harassment, including harassing phone calls; malicious and baseless queries by supervisor; threats of termination; public humiliation during weekly conference calls that included all of plaintiff's peers; and vindictive visits by director, amounted to slights or minor annoyances that often take place at work and that all employees experience, none of which are actionable under Title VII).

Smith also alleges retaliation in that "management threatened retaliation against black employees" for calling Home Depot's "1-800 complaint number," Compl. 5, but in her deposition she testified that the threat was not made to "black employees . . . [h]e said any . . . whoever calls, I'll get rid of them." Ct. R. 76-2, p. 71-2. Smith testified that she did not call the number to complain about her job conditions, either before or after this threat of retaliation, because she didn't trust it. Ct. R. 76-2, p. 69. To become a legal claim, retaliation must

"produce[ ] an injury or harm." *Burlington Northern*, 126 S.Ct. at 2415. Smith identifies no harm to her from the threat and none is indicated by the record. She had already determined that calling the complaint number was not an option she wished to pursue.[3] The alleged threat is therefore not actionable under Title VII. *See Perches v. Elcom, Inc.*, 500 F.Supp. 2d 684, 696 (W.D. Tex. 2007). The Court therefore concludes that Home Depot is entitled to summary judgment on Smith's claims of retaliation.

<u>INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS</u>:

Mississippi courts recognize intentional infliction of emotional distress claims when the defendant's conduct evokes outrage or revulsion. *Jones v. Fluor Daniel Serv. Corp.,* 959 So.2d 1044 (Miss. 2007) (citations omitted). "Liability has only been found where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *White v. Walker*, 950 F.2d 972, 978 (5th Cir. 1991) (quoting RESTATEMENT (SECOND) OF TORTS § 46 comt. d).

In the employment context, the Fifth Circuit has "repeatedly stated that a claim for intentional infliction of emotional distress will not lie for mere 'employment disputes.'" *Id.* (citing *Johnson v. Merrell Dow Pharm., Inc*., 965 F.2d 31, 34 (5th Cir. 1992)). "Mere employment disputes" not actionable through intentional infliction of emotional distress claims include unfair criticism of job performance, poor evaluations, demands that employees quit or face termination based on fabricated reasons, harassment and termination. *Gardner v. Swedish*

---

[3] Smith testified that she did call the "Alert line" "just recently . . . but anytime before that, I did not." Ct. R. 76-2 p. 78. She did not recall what topic she called about. *Id.*

*Match N.A., Inc.*, 2006 WL 2483240 at *4 (S.D. Miss. 2006) (citations omitted). In the Court's view, all of the actions complained of by Smith fall into the category of non-actionable employment disputes. She describes no acts committed by Home Depot which could be considered by a jury to be outrageous or which evoke revulsion. Thus, Home Depot is entitled to judgment as a matter of law on Plaintiff's claim of intentional infliction of emotional distress.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the Motion for Summary Judgment [74] filed by Defendant Home Depot U.S.A., Inc. is **DENIED** as to Plaintiff's claims of racial discrimination based on disparate pay and the failure to promote Plaintiff to the scheduler position. The Motion is **GRANTED** in all other respects and the remainder of Plaintiff's claims are **DISMISSED**.

**SO ORDERED AND ADJUDGED** this the 5th day of December, 2007.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE